NOT FOR PUBLICATION

RECEIVED
SEP 19 2017
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AMERICAN BRIDAL & PROM INDUSTRY
ASSOCIATION, INC., et al.,

    Plaintiffs,

v.

2016DRESSFORPROM.COM, et al.,

    Defendants.

Civ. No. 16-08272

**OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on a Motion for Default Judgment by Plaintiffs American Bridal & Prom Industry Association and its represented companies against Defendants. Defendant has not opposed this motion. The Court has decided this motion based upon the written submissions of the parties pursuant to Local Civil Rule 78.1(b). For the foregoing reasons, the Court grants Plaintiffs' Motion for Default Judgment.

## BACKGROUND

This case is a trademark counterfeiting, trademark infringement, unfair competition, and false designation action brought by a number of bridal, prom, and formalwear designers, represented by the American Bridal & Prom Industry Association[1] (collectively "Plaintiffs") against various online retailers, known by their respective internet handles (collectively

---

[1] The American Bridal and Prom Industry Association ("ABPIA") is a trade association organized to represent the interests of members of the formalwear industry, in part to "take any and all appropriate and lawful action against the marketing and sale of counterfeit formalwear products." (Appl. Pet. TRO Lang Decl. ¶¶ 2–3, ECF No. 5-2.)

1

"Defendants"). (*See* Compl., ECF No. 1) Plaintiffs assert three counts against Defendants: (I) federal trademark counterfeiting and infringement, (II) unfair competition and false designation of origin, and (III) violations of the New Jersey Fair Trade Act. (*Id.*) Plaintiffs allege that Defendants are part of "a massive internet counterfeiting scheme to advertise and sell counterfeit products." (*Id.* ¶ 34.) Through this scheme "Defendants have manufactured, imported, distributed, offered for sale and sold counterfeited goods . . . using Plaintiffs' Marks and/or protected images . . . ." (*Id.* ¶ 35.) Plaintiffs filed this Complaint on November 7, 2016, with summons issued that same day. (ECF Nos. 1, 2.) Plaintiffs filed an application and petition for a Temporary Restraining Order on November 11, 2016. (ECF No. 5.) At a November 28, 2016 status conference the Court directed Plaintiffs to attempt further service. (ECF No. 6.) Plaintiffs' counsel provided a declaration of further service of the Summons, Complaint, and Application for Temporary Restraining Order by registered emails on December 6, 2017 along with receipts of such. (Hilliard Decl., ECF No. 7; Hilliard Decl., Ex. A, ECF No. 7-1.) On January 11, 2017 the Court issued a preliminary injunction enjoining Defendants from use of Plaintiffs' marks and protected images, with service of this order made by registered email, consistent with Plaintiffs' means of service. (ECF No. 13.) Two defendants have been dismissed by consent order since the filing of this litigation. (ECF Nos. 14, 16.) On August 8, 2017, Plaintiffs filed this Motion for Default Judgment (ECF No. 19), which remains unopposed. Default has not been entered by the Clerk of the Court.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, following the entry of default by the Clerk of the Court, default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).

2

Motions for both the entry of default and default judgment can be considered simultaneously at the court and clerk's discretion, at which point the only inquiry is whether default judgment is appropriate. *Napp Tech., LLC v. Kiel Lab., Inc.*, 2008 WL 5233708, at *3 (D.N.J. Dec. 12, 2008) ("Doing so does not change the Court's task: if a default judgment is appropriate, then it follows that the lesser requirements of Rule 55(a) are satisfied."); *Sys. Indus., Inc. v. Han*, 105 F.R.D. 72, 74 (E.D. Pa. 1985) ("Since the court has the authority to enter a judgment by default, it impliedly has the power to perform the ministerial function assigned to the clerk of entering a default.").

A party who has made a proper showing under Rule 55 is not entitled to default judgment as of right; the entry of default is within the district court's discretion. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984). "Default judgment is permissible only if plaintiff's factual allegations establish a right to the requested relief." *Eastern Constr. & Elec., Inc. v. Universe Techs., Inc.*, 2011 WL 53185, at *3 (D.N.J. Jan. 6, 2011). The court must accept plaintiff's well-pled factual allegations in the complaint. *Chanel, Inc. v. Matos*, 133 F.3d 678, 684 (D.N.J. 2015) (citing *Comdeyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

The court is to consider three factors in deciding whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct," taken willfully and in bad faith. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). The Third Circuit has cautioned that default judgment is a sanction of last resort—cases are more appropriately decided on their merits where practicable. *See Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003); *Hritz*, 732 F.2d at 1181.

3

## DISCUSSION

### A. Default Judgment

Plaintiffs filed this Motion after Defendants failed to file any answer or responsive pleadings to their Complaint and Temporary Restraining Order. Therefore, as a threshold matter, Plaintiffs are entirely unopposed. The Court will next consider the sufficiency of Plaintiffs' claims and the factors outlined in *Chamberlain v. Giampapa* to determine whether default judgment is warranted under the circumstances.

1. <u>Sufficiency of Plaintiffs' Claims</u>

In support of their Motion for Default Judgment, Plaintiffs address each count of their Complaint, the elements and requirements of each of those counts, and the facts to support their claims to establish their right to relief.

The same standard is used to assess Plaintiffs' claims for trademark infringement (Count I, 15 U.S.C. § 1114), unfair competition (Count II, 15 U.S.C. §1125(a)), and false designation (Count II, 15 U.S.C. § 1125(a)). *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (applying the same standard to trademark infringement and unfair competition claims); *Fruit Flowers, LLC v. Jammala, LLC*, 2015 WL 5722598, at *3 (D.N.J. Sept. 29, 2015); *Coach, Inc. v. Fashion Paradise, LLC*, 2012 WL 194092, at *2 (D.N.J. Jan. 20, 2012) (citing *A&H Sportswear* for the proposition that the same standard applies to trademark infringement and false designation claims). All three claims require proof: (1) of plaintiff's valid and legally protected mark; (2) plaintiff's ownership over said mark; and (3) that defendant's "use of the mark to identify goods or services causes a likelihood of confusion." *A&H Sportswear*, 237 F.3d at 210; *Coach*, 2012 WL 194092, at *2.

4

The first and second elements are satisfied here. Through its allegations in the Complaint and the copies of numerous trademarks provided, Plaintiff sufficiently establishes ownership of a valid mark. (Compl. ¶ 28; Lang Decl. Ex. A.).

The third factor is a more complex inquiry. "A likelihood of confusion exists when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *A&H Sportswear*, 237 F.3d at 210 (quoting *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992)). This element is satisfied when the original and counterfeit goods are in direct competition, and the mark itself is typically adequate evidence of confusion.[2] *Id.* at 211. Here, Defendants used protected images and marks taken directly from Plaintiffs' websites to market and sell counterfeit dresses and formalwear on their own web domains. (Compl. ¶¶ 34–37; Appl. Pet. TRO Lang Decl., Exs. 1–100, ECF Nos. 5-4, 5-5 (showing side-by-side comparisons of Defendants' infringing websites and Plaintiffs' websites).) This information is sufficiently persuasive to find a likelihood of confusion.

Plaintiffs' trademark counterfeiting claim (Count I, 15 U.S.C. § 1114) has distinct elements. Plaintiffs must establish: "(1) defendants infringed a registered trademark in violation

---

[2] For a more detailed inquiry, which courts need not conduct, the Third Circuit relies on a non-exhaustive list of factors: "(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; [and] (10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market." *Fruit Flowers*, 2015 WL 5722598, at *4 (citing *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 471 (3d Cir. 2005) (internal citations omitted)).

of the Lanham Act, 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing that it was counterfeit or was willfully blind to such use." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (footnote omitted). The key distinction between this cause of action and an infringement claim is the intent and willfulness requirement. *Coach*, 2012 WL 194092, at *3. Willful conduct "involves an intent to infringe or a deliberate disregard of a mark holders' rights" and can be shown through "deliberate and unnecessary duplicating of a plaintiff's mark . . . in a way that was calculated to appropriate or otherwise benefit from the will the plaintiff has nurtured." *Coach, Inc. v. Bags & Accessories*, 2011 WL 1882403, at *3 (D.N.J. May 17, 2011) (internal citations omitted). Plaintiffs have provided sufficient evidence to support their allegations that Defendants acted willfully. Plaintiffs' marks are widely promoted and part of well-known, quality-assured, and successful brands. (Compl. ¶¶ 29–31.) Defendants used Plaintiffs' protected images to market counterfeit formalwear on their own websites. ABPIA's investigations found that Defendants were marketing look-alikes of Plaintiffs' dresses at significant discounts, and the products received were of inferior quality, made with far cheaper substitute materials. (Lang Decl. ¶ 9.)

Plaintiffs' final claim is under the New Jersey Fair Trade Act (Count IV, N.J.S.A. 56:4-1). The analysis of this claim is identical to those set forth for the federal claims above under the Lanham Act. *See Zoetis LLC v. Roadrunner Pharmacy, Inc.*, 2016 WL 755622, at *4 (D.N.J. Feb. 25, 2016). Therefore the Court need not address this Count.

Accepting as true Plaintiffs' factual allegations in the Complaint, *Chanel*, 133 F.3d at 684, the Court is persuaded that Plaintiffs have alleged sufficient facts to establish a right to relief on their enumerated counts, *see Eastern Constr. & Elec., Inc.*, 2011 WL 53185, at *3.

### 2. Default Judgment Factors

Because Plaintiffs are entitled to relief on their claims, the Court next examines the equitable factors of default judgment.

First, Plaintiffs argue that they will be unfairly prejudiced if default is denied. Prejudice refers to an impairment of a plaintiff's ability to pursue its claim. *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982). Failure to file any responsive pleadings may leave a plaintiff without recourse on its claims, *United Comm., LLC v. Hallowell Int'l, LLC*, 2012 WL 5880295, at *4 (D.N.J. Nov. 21, 2012), raising particular concerns for further, future harm, *see U.S. Commodity Futures Trading Comm'n v. Siegel*, 2014 WL 404537, at *8 (D.N.J. Dec. 30, 3014); *CrossFit v. 2XR Fit Sys., Inc.*, 2014 WL 972158, at *8 (D.N.J. Mar. 11, 2014). Here, Defendants have failed to participate in this litigation in any way, (Pls.' Br. at 8, ECF No. 19-1), which leaves Plaintiffs without any opportunity to pursue their trademark infringement claims. Additionally, due to the nature of Defendants' conduct, there is a high likelihood for ongoing infringement of Plaintiffs' marks and images.

Next, Plaintiffs assert that Defendants can have no meritorious defense since they have failed to respond. Whether a defendant has a meritorious or litigable defense is regarded as a dispositive issue. *Nat'l Specialty Insur. Co. v. Papa*, 2013 WL 1952151, at *2 (D.N.J. May 9, 2013); *see also $55,518.05 in U.S.* Currency, 728 F.2d at 195 ("This is a critical issue because without a meritorious defense [Defendant] could not win at trial. Therefore, there would be no point in setting aside the default judgment . . . ."). A meritorious defense is one that would constitute a complete defense at trial. *$55,518.05 in U.S. Currency*, 728 F.2d at 195; *Williams v. Zhou*, 2015 WL 4940817, at *1 (D.N.J. Aug. 19, 2015). Where a defendant has not responded and there are no defenses reflected in the record, courts cannot say whether a meritorious defense

7

exists and are permitted to presume that none exists. *Coach*, 2011 WL 1882403, at *6. Here, Defendants have provided no response to Plaintiffs' Complaint, subsequent pleadings, Temporary Restraining Order, or this motion, and therefore, they have failed to present the Court with any defense that could possibly be considered meritorious or permit success at trial. Moreover, Plaintiffs have articulated a sound right to relief, *supra* Section I.A, and Plaintiffs' pleadings do not contemplate any possible defenses to their claims. (Pls.' Br. at 8–14.) *See Chanel*, 133 F.3d at 686 ("Defendant has failed to proffer any defense to Plaintiff's claims, meritorious or otherwise, and the Complaint does not otherwise suggest the existence of any meritorious defense.")

Finally, Plaintiffs argue that Defendants' failure to respond is per say culpable. Culpable conduct refers to "actions taken willfully or in bad faith," *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 124 (3d Cir. 1983), rising above the level of mere negligence, *Sourcecorp, Inc. v. Croney*, 412 F. App'x 455, 460 (3d Cir. 2011). Failure to defend, despite service of a complaint, is a product of defendant's culpable conduct. *Chanel*, 133 F.3d at 687. Plaintiffs served Defendants by registered emails and made subsequent attempts to effectuate service pursuant to the Court's direction by the end of December (ECF No. 6; Hilliard Decl., ECF No. 7), providing over eight months to respond prior to the filing of this motion. Defendants, however, have failed to respond, which the Court finds to be willful neglect of the pending litigation.

## B. Plaintiffs' Remedies and Damages Sought

Plaintiffs specifically request two forms of relief: first, permanent injunctive relief, and second, damages in the form of profits, or alternatively statutory damages under the Lanham Act. (Pl.'s Br. at 15.)

1. Permanent Injunctive Relief

Plaintiffs ask the Court to order a Permanent Injunction against Defendants for the conduct forming the basis of their current allegations and claims. Their proposed order enjoins and restrains Defendants from conduct including but not limited to: future use of or passing off of Plaintiffs' marks or reproductions, counterfeits, copies, or imitations of such; shipping, delivering, selling, distributing, etc. dresses or accessories bearing Plaintiffs' marks or reproductions, counterfeits, copies, or imitations of such; and utilizing or operating their infringing domains. (Pls.' Br. at 18–19.)

The Supreme Court has set forth the test to determine whether a permanent injunction is appropriate.

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay v. MercExchange*, 547 U.S. 388, 390 (2006); *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 214–15 (3d Cir. 2014) (extending the *eBay* requirements for permanent injunctive relief to cases under the Lanham Act). The Third Circuit has emphasized that a party is not entitled to a presumption of irreparable harm—it must demonstrate that such harm is likely to result. *Ferring Pharm, Inc.*, 765 F.3d at 217.

Plaintiffs argue that this four-factor test is satisfied based on the facts alleged. First, the Third Circuit recognizes "trademark infringement amounts to irreparable injury as a matter of law." *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 237 (3d Cir. 2003) (noting, however, this fact cannot swallow the remaining prongs of the inquiry) (internal citations omitted). More specifically, where trademark violations have been alleged, including diminishment of a

9

plaintiff's brand and name through counterfeited products, "irreparable injury becomes the 'inescapable conclusion.'" *Chanel*, 133 F.3d at 689 (citing *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)); *Coach*, 2011 WL 1882403, at *9 (reaching the "inescapable conclusion" of irreparable injury where there is a risk of confusion caused by the defendant's trademark infringement). Here, Plaintiffs have demonstrated that Defendants used their registered marks and images to sell counterfeit dresses of inferior quality. (Compl. ¶¶ 40, 41, 46, 51, 52; Appl. Pet. TRO Lang Decl., Exs. 1–100.) This conduct has created a likelihood of confusion for consumers. (Pl.'s Br. at 10.) Therefore, the Court is satisfied that Defendants' conduct has de facto irreparably injured Plaintiffs' names and reputations.

Second, injury to a company's reputation and goodwill are not necessarily resolved through monetary compensation. *Chanel*, 133 F.3d at 689; *Coach*, 2011 WL 1882403, at *9. While damages can compensate a plaintiff "for the injury incurred to this point, it will not protect against future infringement." *CrossFit*, 2014 WL 972158, at *10. This case raises concern that Defendants will resume this conduct, *id.*, and monetary relief is not enough to protect Plaintiffs' interests, marks, and integrity from infringement and counterfeit activities.

Third, the balancing of hardships requires courts to consider whether the defendant will suffer any harm from enforcement of the injunction. In cases such as trademark infringement, courts find no harm where a permanent injunction simply "requires [a] [d]efendant to abide by the law and to refrain from infringing [] federally protected marks," and where any resulting injury for violating the injunction would be "self-inflicted." *Chanel*, 133 F.3d at 689. Due to Defendants' already established violations of federal law, *supra* Section I.A, "a permanent injunction in this case would merely prohibit [Defendants] from engaging in an activity to which

[they] have no legal right." *AAMCO Transmissions, Inc. v. Dunlap*, 646 F. App'x 182, 184 (3d Cir. 2016).

Fourth, the Third Circuit specifically recognizes a prevailing public interest in favor of protecting from the erosion of the trademark holder's property interests and avoiding public confusion. *Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 156 (3d Cir. 1984). Therefore, granting Plaintiffs request for a permanent injunction for the alleged Lanham Act and Trademark violations will not in any way disserve the public interest. The circumstances of this case weigh strongly in favor of Plaintiffs' request for a permanent injunction.

2. Damages

While the court need not accept the plaintiff's allegations regarding damages as true, *Chanel*, 558 F. Supp. 2d at 535, final judgment may be entered where damages are for a sum certain, Fed. R. Civ. Pro. 55(b)(2). Under the Lanham Act, there are two options for damages: the plaintiff may elect to recover actual damages based on the defendant's profits, or statutory damages, typically where the actual damages and profits cannot be easily calculated. *Covertech Fabricating, Inc. v. TVM Building Prods., Inc.*, 855 F.3d 163, 176 (D.N.J. 2017); *Chanel*, 558 F. Supp. 2d at 537. It is the plaintiff's choice to make this election or establish a preference for damages. 15 U.S.C. § 1117(c) ("The plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover instead of actual damages and profits under subsection (a), an award of statutory damages . . . .").

The calculation of damages, particularly for questions of actual damages, is an equitable analysis that lies within the court's broad discretion. *See Covertech Fabricating*, 855 F.3d at 176. Damages based on profits are assessed by reasonableness and should be grounded in sufficient information and estimates in the record. *Id.* at 177. This is reflected in the burden

11

shifting framework under the Act itself, which requires the plaintiff to first prove defendant's sales, and then the defendant to prove any costs or deductions he alleges. 15 U.S.C. § 1117(a).

Plaintiffs articulate an argument for both actual damages and a statutory award, though express their preference for actual damages. (*See* Pls.' Br. at 27.) Plaintiffs propose damages equal to the amount currently restrained in Defendants' PayPal accounts—$2,916.56. (Pls.' Br. at 21.) This value is well-supported and grounded in sufficient evidence of financial statements and PayPal statements demonstrating Defendants' profits ($704,241.93), (Hilliard Decl. Ex. N, ECF No. 19-16), and PayPal account information regarding the total funds currently found in each Defendant's account (Hilliard Decl. Ex. O, ECF No. 19-17). Plaintiffs' requested value of damages only represents a small portion of Defendants' profits, minimized to reflect the amount currently available in the accounts as opposed to the Defendants' total amount received which would more accurately reflect the Defendants' revenue. (*Id.*; Pls.' Br. at 27.)

Plaintiffs also articulate an argument for treble damages due to Defendants' willful conduct, though they express their willingness to forgo that request. (Pls.' Br. at 23.) The Court finds these choices to be practical decisions—representative of what Plaintiffs will actually be able to recover through garnishment, and thus a reasonable request of the Court. Therefore, the Court will not award treble damages. Because Plaintiffs' request is a sum certain that is equitable, reasonable, and based on adequate support, they are entitled to this value of actual damages.

## CONCLUSION

For the reasons stated herein, Plaintiffs' motion is granted. An appropriate order will follow.

Date: 9/18/17

ANNE E. THOMPSON, U.S.D.J.

12